FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
6/15/2020
CLERK'S OFFICE
AT GREENBELT
BY KN, DEPUTY CLERK

KOH
EBP/JLW: USAO2019R00587

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO.** PWG 20-cr-0151 |
| | * | |
| **MICHAEL BARRY CARTER,** | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Investment Adviser Fraud, 15 U.S.C. |
| **Defendant** | * | §§ 80b-6 and 80b-17; Forfeiture, 18 |
| | * | U.S.C. § 982, 21 U.S.C. § 853(p), 28 |
| | * | U.S.C. § 2461(c)) |
| | * | |
| ****** | | |

## INFORMATION

### COUNT ONE
### (Wire Fraud)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information:

### Introduction

1. Financial Institution 1 was a multinational investment bank and financial services company.

2. Defendant **MICHAEL BARRY CARTER ("CARTER")** was employed by Financial Institution 1 as a financial advisor in the wealth management segment. **CARTER** was registered to sell securities and act as an investment adviser in the State of Maryland and the Commonwealth of Virginia. In his capacity as a financial advisor, **CARTER's** responsibilities included, among other things, managing the investment accounts for clients of Financial Institution 1 and providing those clients with advice regarding investments in securities.

3. **CARTER** had signatory authority and control over a Wells Fargo Bank account ending in 3095 in **CARTER's** name ("the **CARTER** 3095 Account") and a Wells Fargo Bank account ending in 4508 in **CARTER's** name ("the **CARTER** 4508 Account").

4. Victim 1 was a resident of Maryland.

5. Victim 1 through Victim 5 were clients at Financial Institution 1 who maintained investment accounts with Financial Institution 1's wealth management segment (collectively, "the Victim Accounts"). The Victim Accounts contained a mix of assets, including securities and cash deposits, and collectively held, at various times, millions of dollars in assets. The Victim Accounts were held by a subsidiary of Financial Institution 1 that was registered with the Securities and Exchange Commission as a broker-dealer and investment adviser. The cash deposits in the Victim Accounts were held by one or more subsidiaries of Financial Institution 1, the deposits of which were insured by the Federal Deposit Insurance Corporation.

6. During the course of his employment with Financial Institution 1, **CARTER** managed and had authority over the Victim Accounts. As a financial advisor, **CARTER** was required to, among other things, manage the Victim Accounts in the best interests of his clients, consistent with their investment objectives, and not for his own personal benefit.

## The Scheme to Defraud

7. From at least in or about October 2007 to at least in or about July 2019, in the District of Maryland and elsewhere, **CARTER** devised and intended to devise a scheme and artifice to defraud Financial Institution 1, and to obtain money and property from Financial Institution 1 and Victims 1 through 5 by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and with knowledge of the scheme's fraudulent nature ("the scheme to defraud").

## Manner and Means of the Scheme to Defraud

It was part of the scheme to defraud that:

8. **CARTER** made unauthorized transfers of money from the Victim Accounts.

9. **CARTER** caused the submission of internal bank authorization forms from Financial Institution 1 that falsely stated that **CARTER** had received verbal client instructions from the victims authorizing monetary transfers at a specific time and date.

10. **CARTER** caused the unauthorized wire transfers to be sent from the Victim Accounts to the **CARTER** 3095 Account.

11. **CARTER** transferred the stolen funds from the **CARTER** 3095 Account to the **CARTER** 4508 Account.

12. **CARTER** used the money that he stole from Victim 1 through 5 to pay for numerous lifestyle expenses, including **CARTER's** mortgage, credit card bills, and country club membership fees.

## The Charge

13. On or about December 12, 2017, in the District of Maryland and elsewhere, the defendant,

**MICHAEL BARRY CARTER,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted by means of wire communication, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, that is, **CARTER** transmitted and caused to be transmitted a $470,000 wire communication from Victim 1's bank account located in Maryland to the **CARTER** 3095 Account located outside of Maryland.

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT TWO
### (Investment Adviser Fraud)

The United States Attorney for the District of Maryland further charges that:

1. Paragraphs 1 through 12 of this Information are incorporated here.

2. From at least in or about October 2007 and up to and including at least July 2019, in the District of Maryland and elsewhere, the defendant,

**MICHAEL BARRY CARTER,**

acting as an investment adviser with respect to certain clients of Financial Institution 1, knowingly, willfully, and with the intent to defraud, used the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (a) to employ a device, scheme, and artifice to defraud a client; (b) to engage in a transaction, practice, and course of business which operated as a fraud and deceit upon a client; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, that is, **CARTER**, while an investment adviser at Financial Institution 1, engaged in a scheme to defraud Financial Institution 1's clients whose accounts **CARTER** managed by making unauthorized transfers of money from the clients' accounts for **CARTER's** personal benefit, and in the course of executing such scheme, caused interstate wires to be transmitted to, from, and through the District of Maryland.

15 U.S.C. § 80b-6
15 U.S.C. § 80b-17

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(2) and 21 U.S.C. § 853(p), in the event of the defendant's conviction under Count One of this Information.

### Wire Fraud Forfeiture

2. Upon conviction of the offenses set forth in Count One, the defendant,

**MICHAEL BARRY CARTER,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Count One. The property to be forfeited includes, but is not limited to, at least $4,355,110.39 in U.S. currency in the form of a money judgment.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

18 U.S.C. §§ 982(a)(2) and (b)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: June 15, 2020

*Robert K. Hur/ebp*
Robert K. Hur
United States Attorney