IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PWG-20-151 |
| | * | |
| MICHAEL BARRY CARTER, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through Robert K. Hur, United States Attorney for the District of Maryland, and Assistant United States Attorneys Erin B. Pulice and Jennifer L. Wine, submits this Memorandum in Aid of Sentencing in connection with the sentencing of Michael Barry Carter. Based on the sentencing factors set forth in 18 U.S.C. § 3553(a), including the relevant Sentencing Guidelines, the government recommends that the Court sentence the defendant to a term of imprisonment at the low end of the applicable guidelines range of 97 to 121 months. This is a serious and sophisticated fraud that warrants a just punishment. To his credit, however, the defendant has accepted responsibility for his actions by pleading guilty and admitting to his criminal conduct.

I.   **PROCEDURAL HISTORY**

   A.  **The Charge and Conviction**

On July 20, 2020, the defendant pleaded guilty to a pre-indictment information charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343 and one count of investment adviser fraud, in violation of 15 U.S.C. § 80b-6. As set forth in the statement of facts to the plea agreement, the fraud in this case arises out of a scheme related to the defendant's employment as a financial advisor in the wealth management segment of a multinational investment bank. The

defendant perpetuated the scheme for over a decade, conducting unauthorized transactions in order to steal money from his clients' accounts.

The defendant took advantage of the trust that his employer and his clients bestowed upon him as a financial advisor. The defendant was required to manage his clients' accounts in their best interest, consistent with their investment objectives and not for his own benefit, and both his clients and his employer believed that he was doing that. Instead, the defendant directed millions of dollars in client funds to his own personal bank accounts without their knowledge or permission. He used their money for his own personal benefit, and he forged and fabricated documents to make sure that neither his clients nor his employer would catch onto his fraudulent scheme. The scheme was lucrative and successful. Over more than a decade, Carter made at least 53 unauthorized transfers from his clients' accounts to his own accounts. Carter stole over $6 million from five different clients and a non-profit organization.

## II.     GUIDELINES CALCULATIONS

U.S. Probation and the government agree that the final adjusted offense level is 30, based on the following calculations: the base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1). An 18-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the loss amount is greater than $3,500,000 but not more than $9.5 million. A 2-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(10)(C), because the offense involved sophisticated means. As discussed further below, this enhancement is disputed by the defendant. A 4-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(20)(A)(ii) and (iii), because the offense involved a violation of the securities law, and, at the time of the offense, the defendant was a registered broker or dealer, or person closely associated with a broker or dealer, or investment adviser or personal associated with an investment

adviser. A 2-level increase applies, pursuant to U.S.S.G. § 3A1.1(b)(1), because the defendant knew or should have known a victim of the offense was a vulnerable victim.

If the defendant receives 3-levels off for acceptance of responsibility, the final adjusted offense level is 30. The advisory guideline range resulting from a criminal history category of I is 97 to 121 months.

### A. The Sophisticated Means Enhancement is Appropriate

U.S. Probation assessed a 2-level enhancement for the use of sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(c). PSR ¶ 32. The defense objects to this enhancement.

The Guidelines afford an enhancement when the "offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting the sophisticated means," U.S.S.G. § 2B1.1(b)(10)(c). Application Note 9 defines "sophisticated means" as:

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

*Id.* § 2B1.1 cmt. n. 9.

Here, the defendant's conduct qualifies for the enhancement. This fraud against both a financial institution and six individual victims involved repetitive and coordinated conduct over more than a decade. As the stipulation of facts attached to the plea agreement indicates, the defendant took various steps to dupe his clients and to evade Financial Institution 1's internal controls. For example, he met with Victim 1 at her home in Maryland and, unbeknownst to Victim 1, he answered Victim 1's phone in order to authorize a fraudulent transaction. He did this with full knowledge of Financial Institution 1's multi-factor verification system that was required to

complete the transfer. He also forged his clients' signatures on bank authorization forms, and created false financial statements for his clients to disguise his theft. The scheme, as a whole, was much more intricate than a garden-variety fraud offense. *See United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012) (noting that the enhancement applies where the entirety of a scheme constitutes sophisticated means, even if every individual action is not sophisticated).

### III.   STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

#### A.  Nature and Circumstances of the Offense

The crime that the defendant committed was a serious and long-running, complex and well-orchestrated scheme. Through deceit and deception, he abused the trust of his corporate employer, who relied on him to service clients in an honest way. More tragically, he abused the trust of his clients, many of whom had personal relationships with him. As Victim 3 writes in their victim impact statement, "[w]e considered Michael Carter one of our closest friends and were absolutely shocked to learn that he robbed us of our entire life savings. Even worse was learning that he committed this egregious and premeditated act beginning within 30 days of us opening a [Financial Institution 1] account under his supervision and 'guidance'." *See* Exhibit A, Victim Impact Statement (Victim 3). Victim 5 writes, "being betrayed by a long time family friend deals a huge blow to ones' trust. I am constantly fearing this will happen again and the anxiety this causes is emotionally draining." *See* Exhibit A, Victim Impact Statement (Victim 5). As Financial Institution 1 notes in its Victim Impact Statement, the defendant's crime caused "significant financial loss…irreparable reputational harm, and sustained damage to its relationships with numerous valued customers." *See* Exhibit A, Victim Impact Statement (Financial Institution 1). The defendant recognized the loopholes in Financial Institution 1's internal controls and exploited them. He not only took advantage of the trust that his employer placed in him, but also took advantage of his clients who trusted him with their funds.  As a result of his lies, and despite the

significant income he was earning, over $4 million of fraud proceeds flowed to the defendant as a result of his scheme. The sheer scale of this fraud calls for severe punishment.

### B. History and Characteristics of the Defendant

The defendant's history and characteristics support the government's recommended sentence at the low end of the guidelines. Especially when compared with other defendants who appear before this Court, the defendant had a stable childhood, he was well-provided for, and he is well-educated. He grew up in Maryland, he has relationship with his parents and his siblings, and he never suffered any childhood trauma. PSR ¶¶ 50-56. He is in good physical health, he has no mental health diagnoses, and he has no substance abuse issues. PSR ¶¶ 57-59. He graduated from high school and attended some college, and he has earned numerous certifications in mortgages, insurance, retirement, and financial planning. PSR ¶¶ 61-63. He clearly had the background and the ability to earn a legitimate living. His employment successes and the trust he earned from his clients and his employer demonstrate his intellectual capabilities as well as his ability to manipulate and defraud those around him.

### C. Respect For The Law

Respect for the law requires a significant sentence of imprisonment in order to send a message to the community that the commission of this sort of fraud is a serious offense, and will be punished appropriately.

### D. Providing Just Punishment

A sentence at the low end of the applicable guidelines range is appropriate for a years-long fraud scheme, accomplished only through the defendant's unique position as a financial advisor for a multinational investment back. The defendant's lack of any prior criminal history must be balanced against the criminal acts he committed during the years between 2007 and 2019. The government has taken these factors into account in its recommendation.

### E.  Providing Adequate Deterrence

A sentence at the low end of the guidelines range is also necessary for purposes of general deterrence. The enormity of this offense has understandably captured the attention of local media.[1] Thus, the deterrent message and effect of the sentence imposed by the Court in this case has the ability to resonate significantly with any individual tempted to engage in similar conduct. The fact that a large investment bank with well-developed fraud oversight mechanisms was victimized in this case emphasizes the importance of general deterrence, particularly where individuals may operate under the misapprehension that they are "under the radar" and can avoid scrutiny or criminal prosecution. A significant sentence also has the ability to resonate within the corporate sector and the marketing industry in general. This Court's sentence must send a message to others who might ponder whether the financial gain from fraud is worth the risk of arrest, prosecution, and incarceration.

### F.  Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 of the United States Code requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *Id*.  Significant fraud prosecutions like this one require the government to commit substantial investigative and prosecutorial resources. As a result of the resources required to mount such a prosecution, general deterrence becomes a more important sentencing factor. For instance, in the 2017 fiscal year, of the 66,873 defendants who were sentenced nationwide, only 6,237 of those cases involved theft or fraud. *See* U.S. Sentencing Comm'n Quick Facts: Theft, Property Destruction and Fraud Offenses (2019).[2] Of the cases that

---

[1] *See, e.g.,* Ex-Financial Advisor Pleads Guilty in $6M Fraud Scheme, https://baltimore.cbslocal.com/2020/07/20/ex-financial-advisor-pleads-guilty-in-6m-fraud-scheme/.

[2] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY19.pdf

were sentenced under U.S.S.G. § 2B1.1, the median loss amount was just $137,500; 52% of the cases involved loss amounts of $150,000 or less, and 85.3% of the cases involved loss amounts of $1.5 million or less. *Id.* The loss amount in this case – over $6 million– easily puts this case into the top 15% of cases nationwide. As such, the imposition of a significant period of incarceration reflects the significance of this fraud and would serve to prevent any disparity as to defendants in unrelated but similar cases.

### G. The Need to Provide Restitution to the Defendant's Victims

Pursuant the parties' plea agreement, the defendant has agreed to the entry of a restitution judgment for the full amount of the victims' losses, which the parties stipulated in the plea agreement is at least $4,355,110.39. As set forth in the victim impact statement submitted by Financial Institution 1 (Exhibit A hereto), as a result of the defendant's offenses, Financial Institution 1 entered into settlement agreements with each of the clients defrauded by the defendant resulting in payments by Financial Institution 1 totaling $6,544,228.69 as follows:

| Victim | Compensation Paid by Financial Institution 1 |
|---|---|
| Victim 1 | $1,357,841.68 |
| Victim 2 | $3,193,500.00 |
| Victim 3 | $1,300,000.00 |
| Victim 4 | $676,174.01 |
| Victim 5 | $16,713.00 |
| **Total** | **$6,544,228.69** |

In addition, Financial Institution 1 is also seeking restitution for approximately $89,500 in legal fees incurred by Financial Institution 1 as a result of the defendant's offenses. Prior to sentencing, the government will supplement this filing with a restitution worksheet.

### IV. FORFEITURE

As part of the plea agreement, the defendant agreed to the Court's entry of an order of forfeiture including a forfeiture money judgment of at least $4,355,110.39 in U.S. currency

representing the net proceeds that the defendant obtained as a result of the scheme to defraud. Concurrent herewith, the government is filing a motion for a preliminary order of forfeiture to include the agreed-upon money judgment in the amount of $4,355,110.39. The Defendant further agreed that, due to his acts or omissions, the proceeds of his offense are not currently available to the government for forfeiture, and accordingly, the government is entitled to the forfeiture of substitute assets, should any subsequently be identified, because one or more of the conditions of 21 U.S.C. § 853(p) have been met.

**V.　CONCLUSION**

For the foregoing reasons, and based on a balancing of the applicable factors set out in 18 U.S.C. § 3553(a), including specific and general deterrence, promoting respect for the law and protection of the public from further crimes of this defendant, the government requests that this Court sentence the defendant to a term of imprisonment at the low end of the applicable guidelines range of 97 to 121 months to be followed by a term of three years of supervised release.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:　/s/ Erin B. Pulice
　　　Erin B. Pulice
　　　Jennifer L. Wine
　　　Assistant United States Attorneys

cc:　James Hundley, Esq.
　　　Edwin N. Encarnacion, U.S. Probation Officer (by electronic mail)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was electronically filed on November 9, 2020, through the Court's electronic filing system.

                                                /s/ Erin B. Pulice
                                                Erin B. Pulice
                                                Assistant United States Attorney